# State of New York
## Supreme Court, Appellate Division
### Third Judicial Department

Decided and Entered:  February 19, 2015                    517560
_____

In the Matter of NATHAN COLONA,
                    Respondent,

        v
                                        MEMORANDUM AND ORDER
REBECCA COLONA,
                    Appellant.

(And Another Related Proceeding.)
_____

Calendar Date:  January 7, 2015

Before:  Lahtinen, J.P., Garry, Rose and Devine, JJ.

                    _____

        James A. Mack, Binghamton, for appellant.

        Norbert Higgins, Binghamton, for respondent.

        John M. Scanlon, Binghamton, attorney for the children.

                    _____

Garry, J.

        Appeal from an order of the Family Court of Broome County (Sullivan, J.H.O.), entered August 7, 2013, which, among other things, granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.

        The parties have two children (born in 2001 and 2005).  In 2011, they stipulated to an order by which respondent (hereinafter the mother) had sole custody, and petitioner (hereinafter the father) had an established schedule for parenting time with the children.  In July 2012, the father took the children from New York to his home in Colorado for a

scheduled four-week period. Thereafter, the children remained in Colorado, continuing to reside with their father, and attended Colorado schools through the following school year. In May 2013, the mother traveled to Colorado to retrieve the children and bring them back to New York. The father filed motions for temporary emergency jurisdiction and abduction prevention in a Colorado court. That court declined to exercise temporary emergency jurisdiction and enforced the New York custody order, directing the father to allow the children to return to New York with the mother. Shortly after the children returned to New York, the father commenced the first of these proceedings seeking modification of custody, and the mother commenced a proceeding to modify visitation. Following fact-finding and Lincoln hearings, Family Court, among other things, granted sole custody to the father and placed the children with him during the school year, established parenting time with the mother consisting of seven weeks during the summer and other break and vacation time throughout the year, directed the parties with regard to transportation and contact, and retained jurisdiction relative to the scheduling provisions for a two-year period. The mother appeals.

Family Court properly found that the father had demonstrated a change in circumstances since the 2011 order "reflecting a real need for change in order to insure the continued best interests of the child" (Matter of Greene v Robarge, 104 AD3d 1073, 1075 [2013]; see Matter of John O. v Michele O., 103 AD3d 939, 941 [2013]). The parties disagree as to why the children remained in Colorado following the father's scheduled summer visitation, but the father testified that they did so at the mother's request, and the court found this testimony more credible than the mother's claim that she reluctantly agreed to let them remain upon the father's insistence. This Court defers to such assessments of credibility (see Matter of Cobane v Cobane, 119 AD3d 995, 996 [2014]; Matter of Yishak v Ashera, 90 AD3d 1184, 1185 [2011]). The record reveals that the mother's life had become unstable around the time of the children's departure for Colorado. She and the children had previously lived with the maternal grandmother for approximately five years. However, in March 2012, following an altercation with the mother, the grandmother asked the mother to

leave, lodged a complaint with law enforcement authorities and obtained an order of protection against the mother. Thereafter, child protective workers became involved and, as part of a safety plan, the mother and children moved in with the mother's sister, where they stayed until the children left for Colorado in July 2012. Shortly thereafter, the sister asked the mother to leave because they were not getting along. The mother then moved to an apartment where she resided until May 2013, when she returned to the grandmother's home after retrieving the children from Colorado. The mother testified that she moved back in with the grandmother at the children's request, but from the testimony of the grandmother and the father, it appeared that the grandmother had insisted upon the move to protect the children after the mother's paramour threatened the mother in the children's presence.

The father and his fiancee testified that the older child did very well academically while residing with them in Colorado. The younger child, who has special needs, received tutoring, speech therapy and other assistance, and showed significant academic and behavioral improvements. The fiancee further testified that the children formed close bonds with her two daughters from a prior relationship and her infant twin daughters from her relationship with the father, who also resided in the father's Colorado home. The instability of the mother's lifestyle after March 2012, the children's physical separation from the mother and their adjustment to the Colorado environment were sufficient to demonstrate a change in circumstances warranting an examination of their best interests (see Matter of Hayward v Campbell, 104 AD3d 1000, 1000-1001 [2013]; Matter of Starkey v Ferguson, 80 AD3d 799, 800-801 [2011]).

Some of the factors relevant to an evaluation of the children's best interests include the quality of the home environments provided by each parent, their relative fitness and ability to provide for the children's emotional and intellectual development, and each parent's willingness to foster the children's relationship with the other parent (see Matter of Clouse v Clouse, 110 AD3d 1181, 1183 [2013], lv denied 22 NY3d 858 [2014]; Matter of Gasparro v Edwards, 85 AD3d 1222, 1223 [2011]). The father and his fiancee testified that the children

maintained a regular daily schedule while residing with them that involved chores, family dinner, homework and an 8:30 p.m. bedtime. The father was in the process of buying his three-bedroom home, where the children initially shared a bedroom with each other, but later chose to share rooms with the fiancee's older daughters, who were close to their ages. The fiancee and father stated that they limited the children's exposure to media, such as television and computers, and encouraged them to play outside. The father stated that he supported the children's relationship with their mother and, although he believed that the older child, at 10, was too young for a cell phone, had bought her a phone to enable the children to keep in close contact with their mother.

The father testified that the mother had demonstrated some significant issues with alcohol during the period that the children were residing with him; although the mother and her witnesses denied such issues, Family Court credited the father's testimony in this regard. In addition, the grandmother and the mother's sister testified that they did not approve of the men the mother associated with and that some of the men were unsafe for the children to be around. The father further testified that the children used vulgar language when they first moved in with him and had to be taught not to do so.

Contrary to the mother's contention, Family Court did not err in considering circumstances that were no longer in existence at the time of the hearing, as the court has broad discretion to establish the parameters of proof and may consider any relevant matter in evaluating a child's best interests (see Porcello v Porcello, 80 AD3d 1131, 1134 [2011]; Matter of Gardner v Gardner, 69 AD3d 1243, 1244 [2010]). Considering the evidence as a whole and according deference to the court's factual assessments and credibility determinations, we find a sound and substantial basis in the record for its determination that it was in the children's best interests to transfer custody to the father (see Matter of Paul A. v Shaundell LL., 117 AD3d 1346, 1349-1350 [2014], lv dismissed and denied 24 NY3d 937 [2014]; Matter of Bush v Bush, 104 AD3d 1069, 1071-1072 [2013]).

Finally, the mother contends that the attorney for the children improperly advocated for his opinion of their best interests rather than for the children's preferences, and that Family Court improperly relied upon his recommendation.  Notably, a child's wishes, which must be expressed and advocated by his or her attorney in a suitable manner (see 22 NYCRR 7.2 [d]), are properly taken into account in determining the child's best interests, but are not dispositive (see Porcello v Porcello, 80 AD3d at 1134; Matter of Torkildsen v Torkildsen, 72 AD3d 1405, 1407 [2010]).  Here, the court made clear in its decision that it did not place undue reliance upon the opinions expressed by the attorney for the child.  Upon review, we find that the record provides an independent sound and substantial basis for the court's decision, and we find no reason to disturb it.

Lahtinen, J.P., Rose and Devine, JJ., concur.

ORDERED that the order is affirmed, without costs.

ENTER:

Robert D. Mayberger
Clerk of the Court