Matter of Adam Q. v Alicia R. (2024 NY Slip Op 02562)

Matter of Adam Q. v Alicia R.

2024 NY Slip Op 02562

Decided on May 9, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:May 9, 2024

535843
[*1]In the Matter of Adam Q., Appellant,
v
Alicia R., Respondent. (And Other Related Proceedings.)

Calendar Date:March 25, 2024

Before:Egan Jr., J.P., Lynch, Reynolds Fitzgerald, Ceresia and Powers, JJ.

Brian D. Perskin & Associates PC, Brooklyn (Brian D. Perskin of counsel), for appellant.
Rural Law Center of New York, Inc., Plattsburgh (Lora J. Tryon of counsel), for respondent.
Larisa Obolensky, Bovina Center, attorney for the child.

Ceresia, J.
Appeal from an order of the Family Court of Otsego County (John F. Lambert, J.), entered July 18, 2022, which, among other things, partially granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.
Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the parents of the subject child (born in 2015). For the first year of the child's life, the father and the mother lived together in an apartment in Brooklyn, Kings County. In September 2016, the mother moved out of the apartment and took the child to live in the City of Oneonta, Otsego County, where the mother's relatives resided. In December 2016, following his first weekend-long visit with the child, the father refused to return the child to the mother as the parties had agreed and instead filed a custody petition in the Family Court of Kings County, falsely claiming that he was the child's primary caregiver and that the mother had refused to communicate with him. The father also dishonestly told the mother that he had been granted temporary custody and that she would be arrested if she tried to see the child. After an ensuing encounter between the parties during which the police were called, the mother filed a cross-petition for custody in Kings County. Over the next 3½ years, while the petitions were pending, the parties abided by an agreed-upon 50/50 custody schedule of alternating weeks.
In May 2020, following a lengthy trial, Family Court of Kings County (Mulroy, J.) issued a written decision in which it found that the father's actions in lying to the court and the mother in December 2016 displayed a willingness to act deceptively and make material misrepresentations, behavior that was against the child's best interests. Nevertheless, the court went on to find that the parties were equally fit parents and, based primarily upon geographical factors, awarded them joint legal custody, with primary physical custody to the father and parenting time for the mother on alternating weekends. Upon the mother's appeal relative to the issue of physical custody, the Second Department reversed in March 2021, determining that, particularly in light of the father's past conduct, the best interests of the child would be served by an award of primary physical custody to the mother with an appropriate schedule of parenting time for the father. As such, the Second Department remitted the matter for further proceedings consistent with its determination. Thereafter, in May 2021, the father filed a modification petition seeking to return to the parties' prior 50/50 custody schedule, given that he had moved to Otsego County by this point to be closer to the child. Venue was transferred to Otsego County, and Family Court (Lambert, J.), in accordance with the Second Department's directive, issued a temporary order granting primary physical custody to the mother with parenting time for the father every Wednesday night and every [*2]other weekend from Friday through Monday.
In February 2022, the father filed a second modification petition, seeking sole legal and physical custody of the child. Family Court held fact-finding and Lincoln hearings and subsequently issued an order granting joint legal custody with primary physical custody to the mother and parenting time for the father every Wednesday night as well as every other weekend from Friday through Sunday, with a detailed schedule for holidays and school breaks. The father appeals.
Turning first to the issue of modification of custody, given that the parties do not dispute that a change in circumstances occurred since the Second Department's ruling, we proceed to consider whether the child's best interests were served by the order on appeal (see Matter of David V. v Roseline W., 217 AD3d 1112, 1113 [3d Dept 2023], lv denied 40 NY3d 905 [2023]). In assessing best interests, "courts must consider a variety of factors, including the quality of the parents' respective home environments, the need for stability in the child's life, each parent's willingness to promote a positive relationship between the child and the other parent and each parent's past performance, relative fitness and ability to provide for the child's intellectual and emotional development and overall well-being" (id. [internal quotation marks and citations omitted]; see Matter of Zachary C. v Janaye D., 199 AD3d 1267, 1268 [3d Dept 2021]). "Since Family Court is in a superior position to evaluate the testimony and credibility of witnesses, we accord great deference to its factual findings and credibility assessments and will not disturb its determination if supported by a sound and substantial basis in the record" (Matter of Jehrica K. v Erin J., 223 AD3d 1079, 1081 [3d Dept 2024] [internal quotation marks and citations omitted]).
We discern no basis upon which to disturb Family Court's determination that it is in the child's best interests for primary physical custody to remain with the mother (see Matter of Denise VV. v Ian VV., 205 AD3d 1090, 1092 [3d Dept 2022]; Matter of Paul Y. v Patricia Z., 190 AD3d 1038, 1041 [3d Dept 2021]).[FN1] The mother testified that the child is doing very well in school, attends dance classes after school, and has opportunities to socialize with friends and spend time with her grandparents. Although the father's testimony reflected that he provides a suitable home for the child and earns a comfortable income, the court took note of the father's actions in December 2016 as demonstrative of his inclination to use deception to his advantage regarding circumstances involving the child. The court also referenced the mother's testimony that the father had emotionally and psychologically abused her in the past. Deferring to Family Court's credibility determinations, we find a sound and substantial basis in the record for the court's custody award (see Matter of Jehrica K. v Erin J., 223 AD3d at 1082; Matter of John EE. v Jalyssa GG., [*3]222 AD3d 1219, 1222 [3d Dept 2023]).[FN2]
As for the issue of parenting time, Family Court has broad discretion to develop an appropriate parenting schedule (see Matter of Lora PP. v Alphonso PP., 221 AD3d 1321, 1322-1323 [3d Dept 2023]). In our estimation, the court providently exercised its discretion when, after having the benefit of a full hearing, it set a schedule which differed from the temporary order that was in place pending the hearing. Notably, the final order varied from the temporary order by only one day per two-week period.
Egan Jr., J.P., Lynch, Reynolds Fitzgerald and Powers, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: We note that the appellate attorney for the child supports this conclusion.

Footnote 2: The father takes issue with Family Court's finding that he has a "willingness to manipulate the child," contending that it lacks record support. Upon our review of the record as a whole, including the transcripts of the fact-finding and Lincoln hearings, we conclude that there is a cognizable basis for such a finding.